Ejectment — Plea not guilty and issue. — The plaintiff produced the oldest grant for 5000 acres of land, dated about the year 1786, lying on *Page 457 
the head-waters of Richland Creek, beginning at John Nelson's south-east corner [of grant No. 1120], thence north 1250 poles, east 640 poles, south and west to the beginning, in an oblong. John Nelson's grant was read, which calls to begin about three and a half miles nearly north from the mouth of Robertson's Creek, lying on the head-waters of Richland and Robertson's Creeks. It was proved that these lands, with other adjoining tracts, had been diligently searched after previous to the opening of the office, in August, 1807, and could not be found, and therefore were not placed on the general plan contemplated by the sixth section of the Act of 1806, c. 1. It was admitted that the defendants made their entry after the opening of the land office in that year, and obtained a grant before any corners or line of Polk's tract, or the others adjoining, could be found, which was in the year 1808.
In order to prove the south-east corner of Nelson's tract copies of two other grants to Nelson, of 5000 acres each, — two to Martin Armstrong and one to John Armstrong, all for 5000 acres each, — were offered in evidence; this was objected to on the ground that grants which were not called for either directly or indirectly by Polk, the plaintiff, could not be read, being irrelevant. It was answered, that a party had a right to read what records he thought proper as evidence, and the jury would judge whether the evidence had any bearing on the question or not.
It is the duty of the Court to see that the evidence is relevant, as much as it is that it should be competent. When objections are made the Court will exclude testimony upon either ground, when the incompetency or irrelevancy clearly appears.[1]
When objections are taken to written testimony it should be handed to the Court for their inspection without reading, so that it may not have an effect upon the jury.[2] Upon examination of the copies offered, the Court said it was proper to receive the evidence, as there was such a connection in the calls *Page 458 
of the grants as tended to show the boundaries of the plaintiff's tract; the dispute was a matter of identity only, and the evidence was proper. Copies of these grants were then read, from which appeared the following references in the grants: —
1st. John Armstrong's claim called to include the mouth of Robertson's Creek, and to adjoin Martin Armstrong; this claim of Armstrong calls to adjoin another claim of his, and this last to adjoin Thomas Polk, the plaintiff.
The second claim of John Nelson calls to begin at the south-east corner of his other tract. John Nelson's third tract calls to begin at John Armstrong's south-west corner, all of which may be seen in the subjoined plat. Several searches had been made for these tracts without effect; at length, among a number of persons in search of them, Mr. Coffee and G. W. Camp hell, Esq., found one of the corners of John Armstrong's claim, as they supposed; viz., at H. This corner was found by accident. Upon running north, trees were found marked at G. having a small variation from the course and distance called for in the grant; continuing north, a beech was found at A on the side of a dry branch, as called for in the grant. This tree also varied from a north course more than the first; the grant calls at A for a beech marked E H R W, and an elm. The proof was, there was an elm on the opposite side of the branch, but not marked for a corner at all. The beech was marked with the letters E H R W, and also with W C. There was no line marked east, west, or north from this place; there appeared an old line marked about twenty poles south of this place; none of the lines of Thomas Polk's tract were ever marked, nor corners made, except the supposed one at A.
[1] 1 Cr. 118.
[2] 3 Cr. 186; 4 Dall. 88; 3 Binn. 329.