4 U.S. 76 (____)
4 Dall. 76
Burd, Plaintiff in Error,
versus
Smith, Lessee of Fitzsimons et al.
Supreme Court of United States.

*80 The cause was argued, in this Court, during the 12th, 13th, 14th, and 15th of January 1802, by Ingersoll, Lewis, and M`Kean, for the plaintiff in error; and by M. Levy, Rawle, and Dallas, for the defendants in error.
*86 The Court, after taking time to deliberate, delivered opinions, seriatim, on the 20th of January 1802; of which the following is given as a general outline.
SMITH, Justice.
The question to be decided, is whether the deed of trust is void, or valid, as against the plaintiff in error, upon a just consideration of all the facts, that belong to the case? The ostensible reason, for creating the trust, is a desire to make a fair division of the property among all the creditors of Mr. M'Clenachan; and, if this is the real and operative motive, the deed ought to be liberally construed, in order to give it effect: for, equality is equity. There can be no doubt, likewise, of the right of a debtor (and cases may be easily conceived, in which it would be a duty) independent of the bankrupt laws, to give a preference to some of his creditors, in exclusion of the rest; and, from such a preference alone, the Court would not be disposed, hastily, to infer collusion, secret trusts, or meditated frauds. Hence, it is incumbent upon us to support the present deed of trust, unless in its provisions, and in its operation, it is calculated unlawfully to hinder and delay, to deceive and defraud, the creditors of the grantor. The facts stated in the case, do, indeed, acquit Mr. M'Clenachan of any intentional, or mental, fraud; but it is a distinct inquiry, and the only one before the Court, whether they constitute a legal fraud; so as to vitiate and destroy the act, without criminating the agent.
We are sufficiently impressed with the magnitude of the subject, in all its aspects; as it regards the immediate claims of a numerous body of creditors, and as it regards the precedent to be established for future times: but, avoiding much extraneous matter, which was introduced into the argument, we shall form our judgments, exclusively, upon the facts contained in the special verdict. We find, then, that, when Mr. M'Clenachan purposed to create the present trust, he was oppressed by an immoveable weight of debt. He knew that many suits were instituted against him; that in some of these suits, judgments would certainly be obtained within forty-eight hours; and that in others, the delay of judgment could not exceed a term. The apprehension of these judgments, produced the determination to make an assignment of the estate in trust. But still, if there is nothing unlawful in the mode of effectuating that determination, nothing to justify the suspicion of a latent unlawful purpose, the deed must, as *87 I have said, be sustained. The omissions, as well as the actions, of a man, will often, however, furnish evidence of his motives. In Mr. M'Clenachan's situation, why not call a meeting of his creditors? why not appoint some of them trustees? or why not openly state his object to be an equal distribution, and consult those, who were most interested, as to the means of accomplishing that object? From the start, therefore, when things, which ought to have been done in prudence, as well as candor, are not done, we find reason to suppose, that there is something more intended, than is avowed. Again: when the deed is executed, no schedule designating the creditors, or explanatory of the debts and property, is annexed; so that the trustees remained ignorant (though the grantor was not) of the facts, which were essential to the execution of the trust, until Mr. M'Clenachan's application to be discharged, as an insolvent debtor, in March 1789: and until that period, in fact, the absolute controul of the uses of the trust continued with him.
But, on the very face of the deed, it is void in law. No debtor has a right to make his own trustees; and the very attempt would, under some circumstances, be considered as an act of bankruptcy. In a conflict between the debtor and his creditors, the trustees would generally prefer his interest; and, it must be remarked, that the character and conduct of the present trustees, cannot regulate the decision of a legal question. The assent of one party, as well as the proposition of the other, is necessary to compleat every contract. Burr. 2241. The creditors could have no remedy against the trustees before they assented; and if they did not assent, there was a resulting trust to the grantor, which placed them entirely at his mercy.
It is petitio principii, to argue on the ground that Mr. M'Clenachan might have sold and dissipated the property: and, particularly, after the caution published by the creditors, a purchaser would have run some risque in concluding this bargain. Lord Mansfield somewhere expressly states, that a purchase even for a valuable consideration, but with a view to defeat a judgment creditor, is fraudulent and void.
On these grounds, therefore, that no schedule accompanied, or followed, the deed of trust; that the deed was made without the consent of any of the creditors; and that it contains a resulting trust to the grantor, thereby placing the dissenting creditors in his power; I think the judgment of the Supreme Court ought to be reversed.
BRACKENRIDGE, Justice.
I think the deed of trust is void for various reasons. 1st. The resulting trust, in case of a dissent, on the part of the creditors, is for the debtor himself. 2d. The time, for sale and distribution of the trust estate, is indefinite. 3d. The trust was not accepted by the trustees; or, at least, by the creditors. 4th. The trustees were appointed by the grantor *88 himself. 5th. There is no covenant to compel a sale and distribution. 6th. There is no schedule of the creditors, by which the trustees could know, to whom distribution was to be made.
I will add a general observation. It has been said, that a debtor may favour particular creditors. The right has been allowed, perhaps, on a principle of humanity; or in favour of just debts, to exclude debts in law, not strictly ex debito justi. But I do not think, that the practice should be encouraged. It is calculated to create confusion, uncertainty, and collusion. I see nothing that will prevent the mischiefs of voluntary settlements, and conveyances, but a general declaration that they are all void, as against creditors. The general consent of creditors might, perhaps, be a ground of exception; but not even that should be admitted, to give retrospective force to a deed, with a view to cut out, and defeat, an intermediate lien.
The judgment of the Supreme Court should be reversed.
RUSH, Justice.
Although it has been thought expedient to interweave a great variety of facts, into the statement of the case, now before the Court, yet the decision rests upon a narrow ground. It is a controversy between the creditors of B. M'Clenachan, and the general question turns upon the validity of the deed of the 2d September 1797; by which, the premises mentioned in the declaration, and much other landed property, were conveyed in trust, to A.J. Dallas and John H. Huston, to sell and dispose thereof, in such manner as they should deem most adviseable for the general interest of the creditors; and also that they should pay and distribute the monies arising from the sales, towards the payment and discharge of the debts, of all such of the creditors, as shall in WRITING, agree to accept the same, within nine months, after the date thereof, at such times, as the said trustees shall deem most adviseable, rateably and in proportion, according to the whole amount of the debts of the said B. M'Clenachan; and also, that they the said trustees should pay unto the said B. M'Clenachan, his executors, administrators, and assigns, the proportion of all such creditors, as shall not signify their acceptance, within the specified time, to the intent, that he may therewith and thereout compound with, and satisfy, such creditors.
If this deed be legal and valid, there is an end of the question. The claim of the plaintiff in error must instantly vanish out of sight.
It is therefore proper to inquire,
1st. Is this deed fraudulent or not?
2d. If it be not fraudulent, what is the true construction and operation of it?
1st. The construction of all written instruments, is the peculiar and exclusive duty of Courts. They alone decide on the face of *89 a deed, whether it be void or not; in which cases, such apparent fraud, is called a fraud in law, because it does not depend upon any extrinsic matters of fact, but solely upon the inspection of the instrument, which must necessarily exclude the motive of the grantor.
The deed of September 2d, 1797, purports on the face of it, to delay the creditors of their lawful suits, and is, therefore, within the statutes against fraud. Until the expiration of nine months, no distribution was to be made, nor any creditor paid, however vigilant he might have been. If a debtor may in this mode, and by a device of this sort, frustrate his creditors for nine months, where shall the line be drawn? Why not delay his suit for nine years, as well as nine months? His right is the same, in both cases. As there is no law of the land, that authorises a debtor to pass an act of limitation in his own favour, I hope this Court will never do it for him. The conduct of the debtor reduced to plain language is this: I will bid defiance to my creditors, for any period I shall think proper to fix; and this without their assent or concurrence. I will fix on such trustees as will favour me, by neglecting to advertise till the nine months are nearly expired, in order that a few creditors only, may have notice of the trust, and signify their assent.
In deciding this cause, we are to consider it as a general question. The character of the present trustees is to be kept wholly out of view; for though they would act uprightly, there are other trustees that would act differently. Other trustees might advertise within the last month, in hopes, that only a few creditors would subscribe, and, consequently, the resulting fund be larger and more beneficial for the debtor.
The design of the statutes, is expressly to make void such deeds, as tend to delay and frustrate creditors of their suits. It is not, therefore, material, whether the deed be made to trustees, for the benefit of the creditors, without their knowledge, if it produce this effect. The end shall in no case sanctify the means, and render that legal, which the law has pronounced fraudulent.
In the case before the Court, we have an instance of a man plunged into debt, covered with law suits, overwhelmed with judgments, and others impending over his head, suddenly and secretly, without the knowledge of a single creditor, conveying to trustees of his own nomination, an immense property, on such terms and in such manner, as he has chosen to prescribe. I cannot conceive any thing more dangerous, than to sanction by a judicial determination, a deed of this description. It will be vesting the debtor with unlimited power at all times over his property, to baffle his creditors, under the specious pretext of paying them.
*90 A decision of this sort is warranted by no adjudged case in the books. In Lutwich v. Caillaud, 5 Term, 420. all the creditors, except one, approved of the conveyance in trust, and that one had never sued Lord Abington before the deed was executed. In Englis and others, assignees of Campbell, a bankrupt, v. Grant, it is expressly stated, not only that the generality of the creditors assented to the trust, but the conveyance and covenant were with the creditors of Campbell.
The case of Neeve and Ladbroke, assignees of Wilsmore, v. the executors of Thomas Wilsmore, was a conveyance in trust, to pay a debt due to one of the trustees; without any clause limiting the creditors in point of time, with respect to their demands on the trustees.
From the nature and operation of the deed of the 2d September 1797, as well as by the express terms of it, the grantor has reserved an interest in himself, which is an acknowledged badge of fraud. It should be remembered, that this is an unsolicited deed to trustees, with an important resulting trust; the value and amount of which, is left entirely in the discretion of the trustees. By selling when they think adviseable, and by omitting to give notice of the trust for seven or eight months, nearly the whole property would, by these means, revert to the grantor.
For these reasons I am of opinion, the deed is fraudulent.
2d. But if it be not fraudulent, what are its true operation and construction, in point of law?
It might have happened, and in fact was very near taking place, that the condition on which the deed was to operate, had altogether failed. It was not till the 31st May that any of the creditors signified their assent in writing, as the deed required. It is certain, if no creditor had ever assented, that the trust would have been defeated, and the estate have continued in the grantor. Until the creditors, therefore, or some one of them assented to the deed, it could have no possible operation, so as to accrue to their benefit. Until this event, the trustees were seised to the use of B. M`Clcnachan, and the property remained liable to executions as his. Between the 2d day of September 1797 and the 31st of May following, the title to the premises in question was legally vested in the plaintiff in error, and could never afterwards be divested by any fiction of law.
Upon both these grounds I am of opinion, that the judgment of the lower Court should be reversed.
ADDISON, Justice.
All the points in discussion are reducible to the two questions: 1st. Is the deed of trust valid? 2d. If it is valid, when did it commence its operation?
1st. The deed was executed for an honest purpose; for the sole purpose of making an equal distribution of the property, among all the grantor's creditors; and there is not the slightest symptom *91 of meditated fraud, in any part of the transaction. But the motive, and the effect, of setting this deed aside, will be to prefer the exclusive claim of an individual judgment creditor, to the distributive claims of the general creditors; so that by paying him the whole of his debt, they will be deprived of every part of their debts. I think it, therefore, a duty, by every legal and rational presumption, to support, if possible, the deed of trust; and I find no difficulty, in pronouncing it, in the first place, to be a valid deed.
2d. I am, likewise, of opinion, that the deed took effect from its date. It was susceptible of an honest execution; and it has, in point of fact, been honestly executed. But an honest execution, might have been enforced, if there had been any disposition to evade it. One of the trustees drew the deed, and his name is inserted in it. This was such evidence of an acceptance of the trust, as would be sufficient, with respect to that trustee at least, to enable the creditors to compel him to perform it.
If the deed were framed for an unlawful purpose, or if, in its operation, it must necessarily introduce, dishonest and fraudulent consequences, it ought to be set aside. But this admission does not affect its validity, merely because it tended to delay some creditors. The motive of the party must be weighed. If a deed, which delays and hinders a creditor, is made upon selfish interests, or upon a mere impulse of benevolence, it is within the statute: but a deed made upon a principle of equal justice to all creditors, however it may intercept the views of a particular creditor, is good, in law, equity, and conscience.
I cannot persuade myself to think, that a deed formally made, with such honourable views, can be destroyed by the extrinsic considerations, that the grantor appointed the trustees; that there was no general assent of creditors to the trust; or that a schedule of the creditors was not annexed. And as to the reservation of a contingent interest, or use, for the grantor, it is enough to remark, that it arose out of the nature of the transaction; that it could not take place, but by the negligence of the creditors themselves; and that any attempt of the trustees to favour the grantor improperly, or dishonestly, would be defeated by the powers of a Court of justice.
Upon the whole, therefore, my voice is for affirming the judgment of the Supreme Court.
COXE, Justice.
I have been led to consider the case, with a double aspect, to ascertain, 1st. Whether the deed is, in itself, a good legal conveyance? And, 2d. Whether the trust created by the leed is such as a Court of equity would support?
1st. We are bound by the facts stated in the case, or special verdict; and there, (independent of the deed itself) no allegation, or suggestion, of fraud can be discovered, Consider the transaction *92 in its progressive steps. The very execution of the deed, (which the case states) imports a delivery; and as the fact is not contradicted, it is a necessary legal presumption, that there was a delivery. The subsequent acknowledgment of the execution, is not inconsistent with this presumption; because it is an acknowledgment before a magistrate, of a previous delivery, for the purpose of placing the deed on record. The pecuniary consideration, though a nominal, is a legal consideration; and this is fortified by the equitable consideration, for which the deed was made, a payment of debts. Then, the acceptance of the trust, to execute it, is, likewise, a matter of legal presumption, from the delivery of the deed to the trustees; and, indeed, any other evidence of acceptance, is seldom to be obtained.
Still, however, the great question recurs: is the deed on the face of it, a fraudulent, or a bonâ fide, conveyance? A candid and just interpretation of the trust must enable us to decide. It is true, that the trustees derive from the deed a power to sell the property, as they deem most adviseable; but this is a discretion to be exercised, expressly, for the general interest of he creditors. It is true, that the trustees are only authorised to distribute the fund, among the creditors, who shall agree, in writing, within nine months, to accept their shares; but the exclusion from a share must be the act, or omission, of the creditor himself. It is true, that the shares of the non-assenting creditors are to be paid to Mr. M`Clenachan; but even this payment is to be made, "to "the intent that he may therewith, and thereout, compound with, "and satisfy such creditors." These provisions, however, are the principal sources of objection to the deed itself, as inherent badges of legal fraud. But are there not, on the other hand, unequivocal marks of a fair and lawful trust, that must, at once, obviate and remove such slight and doubtful causes of suspicion? In the first place, there is an equal distribution of all the property conveyed, among all the creditors. In the next place, there is no stipulation for a release in favour of the grantor. And, finally, the creditors, notwithstanding the acceptance of a share in this fund, are left free to pursue every legal remedy, for the recovery of a full satisfaction, against the person, as well as against any other property, of their debtor. It is not to be denied, that the conveyance was made for the very purpose of hindering the lien of future judgments and executions upon the trust property; or, in other words, to preserve the property for an equal distribution among the creditors, instead of leaving it exposed to the priority of judgment creditors alone: but so far from vitiating the deed, so far from justifying the imputation of fraud, this motive has been considered at the bar (and so I consider it) as the best foundation, in law and equity, for the trust. There is no positive statute, there is no rule of the common law, there is no principle of equity, to be traced in the Code of England, or of Pennsylvania, *93 that would warrant us in declaring this deed void, upon such a view of its intention, and its effect.
I will consider, however, more particularly, some of the additional objections, that have been made to the validity of the deed, by the counsel for the plaintiff in error. 1st. It is said, that the trust is general: but both in the manner, and in the time, of executing it, the trustees must act conscientiously, or they will incur a responsibility, as for a breach of trust. 2d. It is said, that the assent of the creditors, in writing, within nine months, is a condition precedent, to the investment of the trust. I am rather disposed, however, to treat it as a condition subsequent, for obvious reasons. The legal title passed on the execution of the deed, and the trust immediately attached to the estate. The assent of the creditors must, to be sure, be given afterwards, in order to entitle them to distributive portions of the fund; but how is the assent to be made a condition precedent, in relation to the legal estate, and the trust, both of which were previously established? The trustees might have sold the property, immediately after the execution of the deed, before any assent declared; and as to a declaration of assent in writing, this has always been regarded as a non-important part of the proceeding. 3d. It is said, however, that there should, in some form, be an assent of the creditors to the trust, in order to render it valid. A difficulty seems here to have arisen from confounding the particular assent, required by the deed to share in the trust fund; and the presumed assent in law, from the date of the instrument: for, whenever a trust is raised for creditors, their acceptance of it is a legal presumption. Nothing remained in M`Clenachan from the execution of the deed, but a mere contingency; and even that contingency, depended entirely upon the act of the creditors. Until the trust was defeated, no judgment, or testatum execution, could affect the property; and, consequently, if it was a good subsisting trust on the 2d of September 1797, it was against all subsequent liens. 4th. It is said, that there was not a schedule of creditors annexed to the deed; but although this may be convenient to the execution of the trust, it does not appear to me to be essential to its validity. The trustees might easily have supplied the want of it, by calling a meeting of the creditors. And the nine months allowed for declaring their assent, and making a distribution, seems but a reasonable period, considering the dispersed state of the debts. 5th. It is said, that the payment of the shares of non-assenting creditors to M`Clenachan, placed them at his mercy; but suppose the objection to this part of the deed should be well founded, does it follow that the whole deed is void? Shall all the assenting creditors be deprived of their interest, because the dissenting creditors have produced a dilemma, in the appropriation of a part of the trust fund? I would rather say, that the trust is bonâ fide and operative, as to the assenting creditors; but void *94 in its modification, as to the shares of the dissenting creditors. 5 T. Rep. 432. 4.
2d. It is my opinion, likewise, that the trust, created by this deed, would be supported and enforced in a Court of equity. A condition subsequent (as I consider the assent in writing of the creditors to be) is seldom literally enforced in a Court of equity; which looks only to the substance of the trust. For instance, either by negligence, or owing to the public calamity of the yellow fever, three months elapsed before the deed of trust was advertised; but Chancery (where time, not being the material point, is often enlarged) would not allow this period to be lost to the creditors. It is not probable, therefore, that there would be an outstanding creditor, in such a case, as the present; and, at all events, so remote a probability ought not affect the decision. A Court of equity could, I think, mould all the powers and forms of the trust, so as to do complete justice to the parties. And what a Court of equity would do, the Judges of Pennsylvania, deciding upon a subject of equity jurisdiction, are in the uniform practice of doing.
For these reasons, I am of opinion, that the judgment of the Supreme Court, ought to be affirmed.
By the COURT, however,
Let the judgment be reversed.