Town of Belmont *vs.* Massachusetts Amusement Corporation & another.

Middlesex. December 8, 1955. — February 10, 1956.

Present: Qua, C.J., Wilkins, Spalding, & Williams, JJ.

*Real Property,* Condition subsequent, Equitable servitude. *Frauds, Statute of.* *Contract,* What constitutes, For reconveyance of land. *Equitable Servitude.*

A common law condition with a right of entry for its breach was not created by a vote of the selectmen of a town that a parcel of land be sold by it on the "condition" that a building be erected thereon within a designated time or the parcel be reconveyed to the town upon failure to do so where it appeared that the selectmen's vote was not recorded and that neither it nor the "condition" was referred to directly or indirectly in the deed given by the town through them to the purchaser, or in a second vote by them to sell to the same pur-

chaser, or in a second deed of the town through them to him, or in a deed subsequently given by him in a sale of the parcel to a third person, although a copy of the vote was delivered to the original purchaser and the "condition" was included in the sale and purchase contract pursuant to which he made the conveyance to the third person and was known to the third person when he took title. [571]

A written offer to selectmen of a town to purchase a parcel of land owned by it upon the condition that a building satisfactory to the selectmen would be erected within a designated time could not be read with a vote of the selectmen, a copy of which was delivered to the offeror, to sell the parcel to the offeror upon that condition, but adding thereto a provision that in the event the building was not erected within the designated time the parcel should be reconveyed to the town, as creating a contract in writing for the sale of land, nor did the offer constitute a memorandum of any contract of sale satisfying the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth. [571]

If a sale of land was made pursuant to an oral contract requiring the purchaser to reconvey the land to the seller upon failure to erect a certain building on the land within a designated time, a grantee of the purchaser having knowledge of the requirement was entitled to avail himself of the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth, in defence to a suit by the original seller for such a reconveyance of the land. [571]

A provision in a vote by selectmen to sell a parcel of land of their town, that a building be erected thereon within a designated time or the parcel be reconveyed to the town upon failure to do so, could not be enforced as an equitable servitude upon the parcel since it did not appear that the town owned any other land constituting dominant land to be benefited by the erection of the building and the alleged equitable servitude was not created by any writing satisfying the statute of frauds. [572]

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated September 11, 1951.

The suit was heard by *Morton*, J.

*Robert W. Meserve*, (*John R. Hally* with him,) for the defendant Massachusetts Amusement Corporation.

*Earle C. Parks*, Town Counsel, (*Melvin F. Lee* with him,) for the plaintiff.

QUA, C.J.   The town seeks by this bill in equity a reconveyance to it by the defendant Massachusetts Amusement Corporation of a parcel of land at the corner of Trapelo Road and Williston Road in the plaintiff town, upon payment by the town to that defendant of $20,000. A demurrer by the defendant above named was overruled and, after

hearing on the merits, a final decree was entered granting against that defendant the relief prayed for and dismissing the bill as to the other defendant Ethel L. Garrity. The Massachusetts Amusement Corporation, hereinafter called the defendant, appealed from the interlocutory and final decrees. The evidence is reported. The appeal from the interlocutory decree overruling the demurrer is not separately argued, presents no question not open on the appeal from the final decree, and will not be further considered.

There seems to be no serious question as to most of the subsidiary facts. In 1923 the town took the land for a fire station, but never used it for that purpose. At a town meeting on March 11, 1946, the town voted by more than a two thirds vote that the land be sold "in such manner, upon such terms and conditions and for such price or prices as the board of selectmen may determine" and that the board be authorized and instructed to execute and deliver the deed "in such form and upon such terms as it deems advisable." In July, 1946, one Winters and the defendant Garrity jointly addressed to the selectmen an offer to purchase the land for $20,000 which contained among other provisions a so called condition that a building satisfactory to the selectmen would be erected within five years from the passing of the title. On July 22, 1946, the selectmen voted to sell and convey the land to Garrity and Winters "upon the following conditions . . . (2) That a building will be erected on said land the plans of which building are to be submitted to the Board of Selectmen for approval, said building to be of suitable design or construction adapted for mercantile purposes. If it is not possible or feasible for said grantees or their nominee or nominees to construct a building which meets the approval of the Board of Selectmen of the Town of Belmont within five (5) years, the said premises are to be reconveyed to the Inhabitants of the Town of Belmont and the purchase price which has been received by the Town of Belmont is to be refunded to the holder of title at the time of said reconveyance." A copy of this vote was delivered to Garrity, who made a deposit of $500. The pur-

chase was completed by a deed of the town signed by the selectmen, dated February 11, 1947, and running to Garrity alone. Winters had died in the meantime. The deed purported to convey a fee simple without covenants. It referred to the vote of the town of March 11 as the source of the selectmen's authority to convey, but it made no reference whatever to the vote of the selectmen of July 22, 1946, and contained no condition or provision relative to the erection of a building or to a reconveyance in the event of failure to erect one. The vote of the selectmen was not recorded with the deed. The judge found, however, that "it was the intention of both the town and the defendant Garrity to accept the deed subject to the condition imposed by the vote of the selectmen." Under date of March 6, 1947, Garrity entered into an agreement in writing with one Kilpatrick by which she agreed to sell the premises to Kilpatrick for $55,000. This agreement provided for a conveyance free from encumbrances, except the "condition" relative to the erection of a building or reconveyance to the town repeated in the same terms as those contained in the vote of the selectmen of July 22, 1946. The town was in no way a party to this agreement.

Upon examination of the title preparatory to the carrying out of this agreement of sale it was discovered that the vote of the town of March 11, 1946, authorizing the selectmen to convey the premises had failed to specify any minimum price as required by G. L. (Ter. Ed.) c. 40, § 15. To correct this omission a special town meeting was held on October 29, 1947, and again the town voted by more than a two thirds vote to authorize the selectmen to fix the terms of sale, except that the price should not be less than $20,000. On November 5, 1947, Kilpatrick assigned to the defendant all his rights in his agreement with Garrity of March 6. On November 7, 1947, the selectmen voted that a deed of the property be executed and delivered to Garrity in consideration of $20,000. This vote contains no reference to the previous vote of the selectmen of July 22, 1946, or to any provision or condition as to the construction of a building

or as to reconveyance in the event of failure to construct a building. Under date of November 7, 1947, the town, acting through the selectmen, gave a second deed of the premises to Garrity. This deed contains quitclaim covenants. It does not mention the earlier deed. Neither does it mention the vote of the selectmen of July 22, 1946, nor does it contain any condition or provision relative to the erection of a building or to reconveyance in the event of failure to erect a building. The judge found, nevertheless, that this deed, like the previous one, was intended by the parties thereto (the town and Garrity) to be subject to the "condition" incorporated in the vote of the selectmen of July 22, 1946. Under date of November 10, 1947, Garrity conveyed by deed with quitclaim covenants to the defendant. This deed, notwithstanding the provisions in the agreement between Garrity and Kilpatrick, contains no reference to the vote of the selectmen of July 22, 1946, or to any condition or provision relative to the erection of a building or to reconveyance in the event of failure to erect a building. The judge finds that the defendant, when it took title, had full knowledge of this "condition" or provision which he finds was intended to be imposed in connection with the two conveyances from the town to Garrity.

No building has been erected on the premises, and the defendant contends that it is not bound by the vote of the selectmen of July 22, 1946, or by any understanding relative to the erection of a building between the town and Garrity. On September 10, 1951, the selectmen voted that the town repurchase the property for $20,000 "in accordance with the terms of the agreement made between the Town and Ethel L. Garrity as recited in a vote of this Board passed July 22, 1946." The defendant declines to reconvey for that price. This suit to compel such reconveyance was brought by writ dated September 11, 1951.[1]

The trial judge took the view that the town had "an equity" in the premises and that the defendant took with

---

[1] It may be noted that five years from the date of the first deed of the town to Garrity did not expire until February 11, 1952.

notice of this "equity" and so is bound by it. It may be that the evidence justified a finding that the defendant took with notice of any "equity" that the town may have had in the land; but our difficulty is in trying to discover that "equity." An equitable interest in land of another cannot arise out of some vague consideration of abstract justice but must be created as the result of some conveyance, contract, fraud, or other circumstance recognized by law as creating such an interest. In the present case it must be remembered that the "condition" or provision for reconveyance of the premises is nowhere mentioned directly or indirectly in any of the deeds. It is mentioned in the agreement for sale and purchase between Garrity and Kilpatrick subsequently assigned by Kilpatrick to the defendant; but when a deed was made pursuant to that agreement it was left out with the knowledge of both parties to the agreement. The town was not a party to that agreement. So far as the town is concerned the only reference to such a "condition" or provision is contained in the vote of the selectmen which preceded the first deed. Neither the town nor the selectmen were bound by this vote. If the selectmen had authority to sell they could change the terms of sale notwithstanding such a vote. They could execute a deed without any previous vote. When as a result of the second town meeting they did acquire proper authority to sell they passed another vote which contained no reference to such a "condition" or provision and then gave a deed that contained no such reference. The second vote of the town cannot be treated as a ratification of the earlier vote of the selectmen because it does not take the form of a ratification, and it does not appear that the voters of the town had knowledge of the selectmen's vote. *Meader* v. *West Newbury*, 256 Mass. 37, 40. *Twombly* v. *Selectmen of Billerica*, 262 Mass. 214, 218. Moreover the second vote of the town permitted a possible purchase price in excess of that fixed in the vote of the selectmen. We do not imply that the result of the case would be different if the second vote of the town had been a ratification of the first vote of the selectmen. It must be remem-

bered that this vote of the selectmen was not in itself a deed, and no reference was made to it in any deed. The delivery of a copy of this vote to Garrity was not the equivalent of the acceptance by her of a deed poll. See *Akasu* v. *Power*, 325 Mass. 497, 500. We do not see how this suit in equity can be maintained on the theory that a common law condition was created for breach of which the town could enter.

It may be that the "equity" the trial judge had in mind was a supposed contract between the town and Garrity to sell and buy on the terms expressed in the first vote of the selectmen. If there was such a valid contract, ordinarily it would bind a purchaser for value with notice. But if we assume that the evidence would justify a finding that there was such a contract, there is a serious question whether such contract would bind the defendant after three deeds in which it is not mentioned. See *Pybus* v. *Grasso*, 317 Mass. 716. However, we do not think it necessary to decide this question, since if there was such a contract, it rested entirely in parol on the part of Garrity, and we can discover no memorandum to satisfy the statute of frauds, which is pleaded by the defendant. G. L. (Ter. Ed.) c. 259, § 1, Fourth. Garrity signed no contract with the town and no memorandum of any such contract. The joint offer of Winters and Garrity addressed to the selectmen in July, 1946, was only an offer and not a memorandum of a completed contract. It could not be read with the first vote of the selectmen as creating a contract in writing, even if the selectmen then had authority, because the terms of the offer and the vote are not the same. Ordinarily only parties to a contract can set up the statute of frauds. *Hoffman* v. *Charlestown Five Cents Savings Bank*, 231 Mass. 324, 329. But there is a recognized exception in favor of the grantee of a party. It would be strange if Garrity could repudiate an oral contract to reconvey to the town but her grantee who takes her rights in the premises could not. *George J. Cooke Co.* v. *Kaiser*, 163 Ill. App. 210, 212. *Givens* v. *Mason*, 205 Ky. 432. *Young* v. *Blaisdell*, 60 Maine, 272, 276. *Hyman-Michaels Co.* v. *Senior & Palmer, Inc.* 265

N. Y. 266, 274. *Gibson* v. *Stalnaker*, 87 W. Va. 710, 716–717. Restatement: Contracts, § 218. Williston on Contracts (Rev. ed.) §§ 529–530. Corbin on Contracts, § 292.

The plaintiff further contends that the so called condition contained in the first vote of the selectmen created an equitable servitude upon the premises. The first difficulty with this contention, even if the so called condition somehow ripened into a contract between the town and Garrity, is that there is no dominant land which the burden of the "condition" could serve. It does not appear that the town owned any other land to be benefited by the erection of a building on the land conveyed. *Lincoln* v. *Burrage*, 177 Mass. 378, 379–380. *Bessey* v. *Ollman*, 242 Mass. 89, 91. *Orenberg* v. *Johnston*, 269 Mass. 312. *Snow* v. *Van Dam*, 291 Mass. 477, 480–481. *Lovell* v. *Columbian National Life Ins. Co.* 294 Mass. 473, 477. *Harrington* v. *Anderson*, 316 Mass. 187, 189–190. The second difficulty is that an equitable servitude is treated as a property interest in land, *Childs* v. *Boston & Maine Railroad*, 213 Mass. 91, *Riverbank Improvement Co.* v. *Chadwick*, 228 Mass. 242, 246–247, *Everett Factories & Terminal Corp.* v. *Oldetyme Distillers Corp.* 300 Mass. 499, 504, *Putnam Furniture Building, Inc.* v. *Commonwealth*, 323 Mass. 179, 184–185, and the statute of frauds has not been satisfied. *Sprague* v. *Kimball*, 213 Mass. 380. *Sargent* v. *Leonardi*, 223 Mass. 556, 558. *Snow* v. *Van Dam*, 291 Mass. 477, 482. Restatement: Property, § 522, and comment f. American Law of Property, § 9.25.

We have explored the case from every angle suggested by the parties or occurring to us and have been unable to find that any "equity" was created in favor of the town enforceable against the defendant. The defendant's appeal from the interlocutory decree is dismissed. The final decree is reversed and a new final decree is to be entered dismissing the bill with costs of appeal to the defendant against the town.

*So ordered.*