J. WILLIAM LINSE & another *vs.* HENRY J. O'MEARA
& others.

Norfolk. October 9, 1958. — January 14, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, &
CUTTER, JJ.

*Bona Fide Purchaser. Notice. Contract,* For sale of real estate, Parties,
Sealed contract. *Frauds, Statute of. Equity Jurisdiction,* Specific
performance. *Equity Pleading and Practice,* Appeal, Report of evi-
dence, Parties, Rehearing.

Where a stenographer was duly designated on a certain day to report
the testimony heard in a suit in equity but reported only the testimony
heard that day and then became sick and another stenographer was
duly designated the next day and reported the remaining testimony
given at the hearing, and on appeal from the final decree the appellant
designated all the testimony for inclusion in the record but by mistake
the transcript of the testimony taken by the first stenographer was
omitted therefrom and the appellant moved in this court to include
the omitted transcript in the record, this court in the circumstances
considered the appeal as one upon all the evidence. [339–341]
A plaintiff seeking specific performance of a written contract by the
defendant to sell land to him was not entitled to assert that a previous
oral agreement by the defendant to sell a portion of that land to a third
person was invalid by reason of the statute of frauds. [343]
The title of one to land conveyed to him for value pursuant to an oral
sale and purchase contract would not be affected by rights acquired
by a third person under another sale and purchase contract respecting
the land made between the seller and the third person subsequent to
the oral contract even though the grantee learned of the later contract
before the conveyance to him. [346]
Where the findings made by the trial judge in a suit in equity on oral
evidence reported to this court on appeal from the final decree lacked
clarity respecting a determinative issue, this court, instead of itself
making a finding on that issue, reversed the decree and remanded the
suit to the trial court for the making of such a finding and the entry
of an appropriate decree accordingly. [346, 347]
Two persons named as the buyers of land in a purchase and sale agree-
ment under seal were not barred from maintaining a suit for its specific
performance by the fact that one of the plaintiffs did not sign the
agreement or the bill in equity where it did not appear that delivery

of the agreement by the seller was dependent on obtaining the signature of the nonsigning plaintiff, or that it was material to the seller whether that plaintiff signed or was bound, or that the nonsigning plaintiff objected to prosecution of the suit in her name. [346–347]

BILL IN EQUITY, filed in the Superior Court on June 25, 1956.

The suit was heard by *Goldberg, J.*

*Edward M. Dangel,* (*Leo E. Sherry & Max L. Glazer* with him,) for the plaintiffs.

*Thomas F. Donnelly,* for the defendant O'Meara.

*Simon B. Stein,* (*Edward T. Cauley* with him,) for the defendants Cauley.

CUTTER, J. This is a bill in equity by one Linse and his wife to obtain specific performance of a written agreement between the defendant O'Meara and the Linses for the sale to the plaintiffs of a parcel of land (hereinafter called the barn lot) on South Street, Needham. The bill alleged that the defendant Cauley, knowing of the agreement between O'Meara and the Linses, conspired with O'Meara to prevent the plaintiffs from acquiring the barn lot. Mrs. Cauley was also named as a defendant. A final decree was entered dismissing the bill as against Cauley and Mrs. Cauley and ordering O'Meara to repay to Linse a deposit of $500. The Linses have appealed.

1. A question arises with respect to the scope of the present appeal. It appears that, on April 8, 1957, one Keyes, a court stenographer, was duly designated to report the testimony, and that on April 9, 1957, one Browning also was designated. Keyes reported only the testimony on the first day of trial and then became sick. By some mistake, in the preparation of the record on appeal, the transcript of the twenty-nine pages of testimony taken by Keyes was not included in the record entered in this court, although the approximately three hundred pages of testimony taken by Browning were so included. This mistake took place despite the fact that the plaintiffs designated the whole transcript for inclusion in the record. The twenty-nine pages were obtained by counsel for the Linses from Keyes's stenographic

notes, after Keyes's death.   The defendants oppose the allowance of a motion by the plaintiffs to include in the record these twenty-nine pages which have been presented to us in support of the motion.   These pages appear to be now relevant to the vital issue on this appeal (i.e. whether Mrs. Cauley was a bona fide purchaser) only for the purpose of eliminating any contention that all of the evidence is not before us.

Under G. L. c. 231, § 135 (as amended through St. 1941, c. 187, § 1) the appealing party, rather than the clerk, has the duty to use "reasonable diligence in procuring the transcript."   See *Trade Mut. Liab. Ins. Co.* v. *Peters,* 291 Mass. 79, 84–85.   Despite the understandable confusion caused by the designation of two court stenographers, successively, to report the testimony, the plaintiffs' counsel should have made certain that the transcript filed with the clerk was complete.   See *Hubbard* v. *Southbridge Natl. Bank,* 297 Mass. 17, 19.   See also *Maraghey* v. *Tarpey,* 334 Mass. 157, 159.   The trial judge and the parties, however, obviously supposed that the whole transcript had been filed with the clerk as contemplated by Rule 2 (A) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693.   See also Rule 76 of the Superior Court (1954) as amended April 26, 1957.   Because this had not in fact been done, it would seem that any notice given by the clerk under Rule 2 (A) was premature with the consequence that the entry of the present appeal in this court was likewise premature.   No motion to dismiss the appeal for unreasonable delay in filing the complete transcript was filed in the Superior Court under G. L. c. 231, § 133 (as amended through St. 1933, c. 300, § 2).   At this stage of the proceedings and under the somewhat unusual circumstances here present, we do not feel that we should limit review of the case to less than all the evidence.[1]   As we view the case,

---

[1] We need not decide whether, in view of the inadvertent omission of part of the testimony, we would have authority, under the third paragraph of § 135 or otherwise, to require transmission to us of the missing pages.   In closely analogous circumstances, we have exercised available authority to ensure to an appellant the equivalent of the "substantial right" of a review by appeal upon all the evidence, where to do otherwise "would be manifestly unjust."   *Brooks* v. *National Shawmut Bank,* 323 Mass. 677, 680–685.

further consideration of the evidence by the trial judge and further findings by him are necessary in any event. Accordingly we have considered at this time the questions which would have been presented by an appeal clearly one upon all the evidence, so that the trial judge will have before him our views on the issues upon which his further consideration is necessary.

2. The following relevant facts were found by the trial judge. O'Meara agreed to purchase approximately sixty acres of land from one O'Keefe. In April, 1956, he engaged engineers to draw plans for subdividing the land, which contained a house and a barn. One engineer was told that one lot (the barn lot) of about one and one half acres was to include the barn and that the house was to be within a separate lot of about six acres (hereinafter called the house parcel). An engineer gave O'Meara a tracing of such a subdivision.

O'Meara engaged one McIsaac, a real estate broker, to procure a customer for the barn lot. O'Meara pointed out the boundaries to McIsaac and the latter obtained a copy of a print made from the subdivision tracing. McIsaac showed the property and the tracing print to Linse and walked with him over the property. On May 10, 1956, O'Meara and his wife and Linse signed an agreement for the sale for $12,500 to Linse and his wife of the "barn and land at 410 South Street, Needham, as drawn on a plan by Frank L. Cheney, Engineer, dated May 8, 1956, containing about 64,841 feet." Title was to pass on June 15, 1956. Mrs. Linse never signed the agreement. O'Meara received from Linse his check for $500 and deposited it, indorsing it under the words "Deposit on 1½ acres of land & barn at 410 South St. Needham."

"Prior to" June 15 (the Cauleys contend that it was in late April) O'Meara orally agreed with Mrs. Cauley "to convey the house and lot to her and to convey the balance of the 60 acres"[1] to one Jensen and one Bielski. Cauley in

---

[1] If the judge by this finding meant that O'Meara and Mrs. Cauley agreed that the barn lot was to be conveyed to Jensen and Bielski, the finding is in error. It appears always to have been expected that Jensen and Beilski would not buy the barn lot. If there is error in the finding, it does not seem material now.

April had agreed to finance O'Meara in the purchase of the
land from O'Keefe and had furnished on April 12 his check
for $5,000 to O'Keefe (which the testimony shows to have
been a deposit). On June 15 O'Meara authorized O'Keefe
to convey the sixty acres to Mrs. Cauley and that same
morning he did so. The trial judge expressly found that
Mrs. Cauley, "out of her personal funds, paid a substantial
sum . . . for the conveyance to her by O'Keefe and that
she is a bona fide purchaser." He also found expressly that
"Cauley knew of the agreement by O'Meara to sell the barn
and lot to Linse . . . that the conveyance, under the agree-
ment, was to be made on June 15 at 2 P.M. [and] . . . that
he did induce O'Meara not to convey the barn and lot to
Linse unless Linse agreed to change the boundary lines so
that some of the land would go with the house and lot which
Mrs. Cauley intended to buy and which the Cauleys in-
tended to occupy."

With respect to the agreement between O'Meara and
Linse, the judge found that O'Meara intended to sell and
Linse to buy "precisely what the agreement . . . and the
sketch . . . [i.e. the surveyors' tracing, above mentioned]
called for." On June 15 at 2 P.M., "Linse was at the regis-
try of deeds and . . . then ready and able and willing to ac-
cept a deed for the barn and lot and to pay . . . the balance
of the purchase price." O'Meara "did not appear and did
not intend to . . . convey to Linse. He still has the $500
deposit."

The judge ruled that O'Meara had committed a breach
of a valid contract for which he was liable to the plaintiffs
in nominal damages only, since no evidence of damage was
introduced. He also ruled that "specific performance can-
not now be decreed, since Mrs. Cauley has a valid title,
paid valuable consideration therefor, and was not a party
to inducing O'Meara not to perform under his agreement
with Linse. There is no evidence that she knew the con-
tents of that agreement."

3. Although the parties have argued many issues, it is
plain that the plaintiffs cannot have specific performance

if, as the trial judge found, Mrs. Cauley has title to the house parcel and the barn lot and is a bona fide purchaser. The present controversy arises because it was discovered late in May or early in June that Mrs. Cauley claimed she had an oral contract to acquire from O'Meara the house parcel, including as a part of that parcel some land (hereafter called the disputed area) on the westerly side of the barn lot that O'Meara had agreed to sell to Linse.

The judge's finding, that "[p]rior to June 15, O'Meara orally agreed with . . . [Mrs.] Cauley to convey the house and lot to her," does not definitely fix the date of the oral agreement or the exact content of "the house and lot." The evidence, however, would justify findings that O'Meara had an oral agreement with Mrs. Cauley, as early as April 30, to sell to her for $40,000 the house parcel and, as part of it, the disputed area. As to such an oral agreement, only one who was a party to it could assert the statute of frauds. Restatement: Contracts, § 218. See *Hoffman* v. *Charlestown Five Cents Sav. Bank*, 231 Mass. 324, 329; *Belmont* v. *Massachusetts Amusement Corp.* 333 Mass. 565, 571.

The evidence does not show clearly how much Mrs. Cauley knew, before title passed to her, about the full details of any overlapping of the area which she proposed to buy from O'Meara and the barn lot. The affidavit mentioned below appears to be the most direct testimony that Mrs. Cauley had seen, or actually knew the contents of, O'Meara's contract with the Linses. See *South St. Inn, Inc.* v. *Muehsam*, 323 Mass. 310, 312. Cauley testified that he "never knew of it [Linse's contract] until three or four days after it was executed," did not see it until even later, and first approached Linse about it in June "a week or some two weeks after . . . [he] learned of" it. Cauley admitted executing an affidavit that "as soon as the situation was called to the attention of Mrs. Cauley, and at her request . . . [he, Cauley] had three interviews with . . . Linse, two of them before the 15th of June . . . in which . . . Linse asked for time to consider . . . various suggestions and commitments made by . . . [Cauley] in behalf of his wife

. . . which in substance, was to give . . . Linse the barn and the same amount of land . . . specified in the agreement between . . . O'Meara and . . . Linse . . . and an alternative to purchase from him sufficient land which would not deprive Mrs. Cauley of the lawn . . . , the driveway, the shrubbery and trees, all of which comprise an entrance to the front of her home." There was also testimony that Mrs. Cauley, on June 15, agreed with the attorney for the savings bank which took a mortgage from her on the house parcel that a supplemental mortgage would be given when the boundary of the barn lot was settled. The testimony just summarized tended, of course, to show knowledge on her part on June 15 that the boundary was not finally fixed, and that Linse claimed to be entitled to purchase the disputed area.

It is not necessary to state here in detail all the remaining evidence on the issue whether Mrs. Cauley was a bona fide purchaser. *Hosken, Inc.* v. *Hingham Management Corp.* 328 Mass. 588, 591. Two aspects of it are relevant.

*First.* The evidence justified the judge's finding that Mrs. Cauley paid value for the conveyance to her (at O'Meara's direction) of all the sixty-three acres which O'Keefe had agreed in April, 1956, to sell to O'Meara for $95,000. She obtained $25,000 from a savings bank, through a mortgage on the house parcel. This sum she paid to O'Keefe, together with $19,400 of other funds. Other somewhat ambiguous evidence indicated that she also contributed a further $10,000 withdrawn from another savings bank. There was thus basis for finding that Mrs. Cauley provided not only the $40,000 for the house parcel, but, in addition, either $4,400 or $14,400 toward purchase of the remaining land.

*Second.* A more difficult question is whether Mrs. Cauley had knowledge of the Linses' contract with O'Meara sufficiently early and to a sufficient extent to prevent her purchase from being bona fide. Any such knowledge[1] on her

---

[1] Mrs. Cauley could not be a participant in a joint venture with her husband, *Edgerly* v. *Equitable Life Assur. Soc.* 287 Mass. 238, 243, and she was never a tenant by the entirety with him. She thus could not be charged with notice of the Linses' rights on any basis analogous to that considered in *Kosior* v. *Continental Ins. Co.* 299 Mass. 601, 604.

part prior to her acquisition of title to the land must ·rest either (a) on an inference that her husband was in fact her agent (see *Macklin* v. *Macklin,* 315 Mass. 451, 455; Restatement 2d: Agency, § 22) so that she was bound by his knowledge of the Linses' rights (Restatement 2d: Agency, §§ 272–274), or (b) on the inference that Cauley must have told her of the facts.

The evidence was largely oral. The judge did not make inferences which would charge Mrs. Cauley with knowledge, but reached a contrary conclusion. "[W]e can find facts not expressly found by the judge. If convinced that he was plainly wrong, we can find facts contrary to his findings." *Lowell Bar Assn.·* v. *Loeb,* 315 Mass. 176, 178. We recognize that the judge who heard the witnesses is in a better position "than we are on the printed record" to determine the weight and credibility of the evidence. *Ross & Roberts, Inc.* v. *Simon,* 326 Mass. 12, 17.

It could have been found that Cauley acted, in some phases of the transaction at least, in behalf of his wife. See *LeBlanc* v. *Molloy,* 335 Mass. 636, 638–639. He was an attorney and real estate man. She had never been in the real estate business. He appears to have dealt with certain matters, as, for example, arranging with O'Meara that the whole sixty (or sixty-three) acre parcel would be transferred to Mrs. Cauley. The testimony indicates, however, that she herself made the arrangement with O'Meara for purchase of the house parcel and possibly also arranged the savings bank mortgage on the house parcel.

Much of the testimony was indefinite. The witnesses were not pushed to reveal the scope of Mrs. Cauley's knowledge on any particular dates, or of the authority, if any, given by her to her husband to act for her. She was not called as a witness as she could have been. Nevertheless, it is hard to believe that Cauley was not his wife's agent, at least for the limited purpose of dealing with matters relating to the boundary confusion, or that he failed to give his wife a very full account of his negotiations. We, accordingly, conclude that by June 15, and for several days before

that, Mrs. Cauley was charged with knowledge that Linse had a written contract to purchase the barn lot including the disputed area. Any finding of the trial judge to the contrary was plainly wrong.

The judge, however, might have concluded that she was a bona fide purchaser because she had, in April before the O'Meara-Linse contract was made, an oral agreement, in fact carried out, to acquire the house parcel and the disputed area from O'Meara. If so, she as holder of the earlier agreement would have the stronger claim and would not be affected by her later acquired knowledge of Linse's later acquired contract rights. See *Coastal Transit Co.* v. *Springfield Bus Terminal, Inc.* 302 Mass. 513, 517–518. See also Restatement: Contracts, § 368; Williston, Contracts (Rev. ed.) § 1429. Cf. *Goodyear Tire & Rubber Co.* v. *Bagg,* 292 Mass. 125, 128. The judge's finding about the oral agreement, although consistent with such a view, is not entirely clear. We could ourselves make a finding on this issue, but because the evidence was oral, the finding far more appropriately should be made by the judge who heard and appraised the witnesses. Accordingly, we remand the case to the Superior Court for further findings by the trial judge. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225. If the judge shall find that Mrs. Cauley made in April an oral agreement to purchase the house parcel and the disputed area, she cannot be affected by the Linses' contract rights with respect to those areas. The Linses, however, will be entitled to elect within a reasonable time to have specific performance of their agreement to purchase the balance of the barn parcel, if they wish to pay the full purchase price for it. They are not entitled to a reduction in price or damages for any diminution in the size of the lot, for they have proved none. If the judge shall find that the oral agreement was not made prior to the Linse-O'Meara agreement, or that it did not include the disputed area as well as the house parcel, the Linses are entitled to have specific performance of their entire agreement.

The Linses are not barred because Mrs. Linse did not sign

the agreement. Cases like *Seretto* v. *Schell*, 247 Mass. 173, 176–177, *Exchange Realty Co.* v. *Bines*, 302 Mass. 93, 98–99, and *Shawsheen Manor Corp.* v. *Colantino*, 329 Mass. 715, 718, are distinguishable. See also *Ferrick* v. *Barry*, 320 Mass. 217, 224–225. It is true that Mrs. Linse did not sign the agreement or the bill in the present suit, and that Linse testified that he did not intend that she would sign or be bound by the agreement. Nevertheless, it has not been shown that the delivery of the sealed agreement was, or was meant to be, dependent upon her signing, or that it made any difference to O'Meara whether she signed or was bound. O'Meara presumably could have enforced the agreement against Linse even if Mrs. Linse had not become bound, for Linse's performance was not dependent on any performance by Mrs. Linse. See *Eliopoulos* v. *Makros*, 322 Mass. 485, 488–489. Cf. *Applegate* v. *Nager*, 287 Mass. 188, 190. Even if Mrs. Linse did not sign the bill of complaint, she does not appear to have objected to its prosecution in her name and such prosecution can be regarded as ratification of the agreement by her. *Gross* v. *Cohen*, 236 Mass. 468, 470. See *Hamilton* v. *Coster*, 249 Mass. 391, 395–396. The cases, already cited, relied upon by the defendants are distinguishable in that they involved attempted enforcement of the terms of a sealed instrument against a person not formally a party to it and not, as here, enforcement of a sealed agreement by a nonsigner, named in it as a party.

The decree must be reversed as to all defendants and the case remanded to the Superior Court for further findings and the entry of an appropriate decree, consistent with this opinion, in the light of those findings. No occasion for the taking of further testimony appears unless, in the discretion of the trial judge, that appears to be desirable. See *Coletti* v. *Hart, ante,* 174, 177–178, and cases cited. The plaintiffs are to have costs of this appeal.

*So ordered.*