UNITED STATES of America

v.

Ian S. EDWARDS.

Crim. No. 95–10111–WGY.

United States District Court,
D. Massachusetts.

Nov. 6, 1995.

Michael L. Altman, David C. Fixler, Rubin and Rudman, Boston, MA, for Defendant.

## MEMORANDUM

YOUNG, District Judge.

On July 19, 1995, a jury of this Court convicted Ian S. Edwards ("Edwards") of one count of bankruptcy fraud pursuant to 18 U.S.C. § 152, finding that Edwards had failed to disclose in his bankruptcy proceeding an equitable interest in a condominium on the island of Barbados. Edwards moved for a judgment of acquittal or a new trial on the ground that the Government had not proven that, under the law of Barbados, Edwards possessed an equitable interest in the property at the time of his bankruptcy filing. At a sentencing hearing on September 22, 1995, the Court denied the motion for acquittal or a new trial and sentenced Edwards to a year and a day, six months to be served in a halfway house and six months of home detention. This memorandum explains the reasoning behind the denial of the motion.

## I. Facts

Consistent with the verdict of the jury, the following facts were established at trial. In 1979, Edwards purchased a condominium in Barbados, the land of his birth, as a retirement home. The property is located in a resort community and has produced rental income to Edwards since that time. In the mid–1980's, Edwards, who has been employed for many years in the rent-a-car business, purchased three Hertz franchises from one George Iverson ("Iverson"). The franchises foundered and immersed Edwards in financial difficulties which led Iverson to file suit and obtain a judgment against Edwards for approximately $175,000 in November 1988.

A short time later, Edwards retained an attorney in Barbados to convey title in the condominium to his adult son, Anthony Edwards ("Anthony"). Title was purportedly conveyed to Anthony by deed dated February 22, 1989. Anthony paid no consideration, and Edwards paid no gift tax. Edwards and Anthony continued to treat the condominium as before, with Edwards collecting the rent, paying the mortgage, and claiming it as his own on his federal income tax returns. Edwards maintained, and so testified at trial, that he and his wife had decided to give the condominium to Anthony because of Anthony's avowed desire to join the Barbados Defense Force (the "BDF"), and was not motivated or influenced by either the Iverson judgment or his subsequent bankruptcy filing. Apparently, it was the Edwards' belief that in order for Anthony to realize his "dream" of joining the BDF, he would have to become a Barbados citizen, and that his ownership of real estate in Barbados would aid in or accelerate that process.

In December 1989, ten months after the transfer to Anthony, Edwards filed a voluntary Chapter 7 bankruptcy petition. On his Schedule of Assets, Edwards did not list any interest in the Barbados condominium. He also (1) falsely asserted that he had made no unusual or out-of-the-ordinary gifts to family members; (2) failed to list as a creditor the bank holding the mortgage on the Barbados property; (3) failed to disclose the current rental income from the condominium or the income received during the prior two years; and (4) failed to disclose his consultation with the Barbados lawyer. He obtained a discharge in April of 1990, and the proceeding was closed as a "no asset" case.

Fifteen months later, in July, 1991, Anthony executed a deed purportedly reconveying title to the property to his father. Edwards has paid off the mortgage, owns the condominium free and clear of all liens, and continues to derive rental income.

## II. Discussion

Under the Bankruptcy Code, a debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. 11 U.S.C.A. § 541(a)(1) (West 1993) ("Section 541"). Federal law criminalizes the concealment of assets by a debtor from the bankruptcy estate and the making of false oaths or accounts in the bankruptcy proceeding. 18 U.S.C.A. § 152 (West Supp.1993).

The Government's theory here was that the conveyance to Anthony was a sham transaction from the beginning, orchestrated to preserve and protect the condominium from the claims of creditors, primarily Iverson, before and during the bankruptcy, and that from the commencement through the discharge of the bankruptcy, Edwards retained an equitable interest in the property. By failing to disclose that interest, the Government argued, Edwards violated section 152. *See United States v. Moynagh,* 566 F.2d 799, 803 (1st Cir.1977), *cert. denied,* 435 U.S. 917, 98 S.Ct. 1475, 55 L.Ed.2d 510 (1978) (failure to disclose equitable interest in boats sold by debtor to corporation whose sole stockholders were debtor's mother and son supported charge of bankruptcy fraud); *see also United States v. Weinstein,* 834 F.2d 1454, 1461 n. 2 (9th Cir.1987) (citing cases where failure to disclose equitable interest created criminal liability); 4 Collier On Bankruptcy ¶ 541.06 (Lawrence P. King ed., 15th ed., 1995). The Court charged the jury:

[I]n determining whether the debtor had an interest in the property charged to have been concealed or transferred, you should evaluate all relevant direct and circumstan-

tial evidence relating to the property and to the intent of the debtor. If Ian Edwards actually retained some interest in the Barbados condominium through some deal with his son, even though it was not written down anywhere, that interest is part of the estate of the bankruptcy.

The jury so found.

■ Edwards argued generally prior to the charge, and more specifically in support of the motion for judgment of acquittal, that Barbados law controlled the question whether he possessed an interest in the condominium, and that the Government was obligated to come forward with proof that Edwards retained an equitable interest cognizable under Barbados law. He asserts, theoretically, that if Barbados does not recognize equitable interests in real property, but rather invests all right, title, and interest solely to the holder of legal—i.e., record—title, then the condominium was not part of his estate because all proper forms of legal conveyance had been observed. Therefore, Edwards contends that the Government, which proffered no evidence whatsoever on Barbados law, failed to sustain its burden of proving an interest in the condominium. Short of that, Edwards insists that the Court should have instructed the jury regarding Barbados property law and not "federal" law.

■ Edwards' arguments, though provocative, are flawed. He is correct that the Bankruptcy Code envisions resort to state law to give substance to the somewhat tautological definition of "property of the estate" in Section 541. *See Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law"); *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). The application of state law, however, is more than a mechanical process; it may only occur when state—or any foreign—law is not inconsis-

tent with federal bankruptcy law. *See Butner,* 440 U.S. at 55, 99 S.Ct. at 918 (property interests created and defined by state law "[u]nless some federal interest requires a different result"); *In re Sierra Steel, Inc.,* 96 B.R. 271, 273 (9th Cir.1989) (existence and nature of debtor's interest in property determined by state law "applied in a manner consistent with federal bankruptcy law"). Where state law conflicts with, or would hinder, the policies underlying the Bankruptcy Code, the Court may not apply it. *See In re N. Amer. Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir.), *amended,* 774 F.2d 1390 (9th Cir.1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986) (bankruptcy estate not automatically deprived of funds that state law might find subject to constructive trust); *In re Esgro, Inc.,* 645 F.2d 794, 797 (9th Cir.1981) (state law not permitted to impose a trust on commingled property of bankrupt's estate because of countervailing federal bankruptcy policies); *In re Gibbons–Grable Co.,* 100 B.R. 901, 904 (Bankr.N.D.Ohio 1989) (construction and application of Ohio statute as granting priority over trustee's claim as lien creditor "contrary to the provisions and the intent of the bankruptcy laws," and will not be allowed).

■ Quite simply, if Barbados law were as Edwards posited it and recognized only legal title, such law would be so manifestly inconsistent with the language, goals, and policies of the Bankruptcy Code as to preclude its application.[1] The federal statute explicitly defines "property of the estate" as "all legal *or equitable* interests" of the debtor, 11 U.S.C.A. § 541(a)(1) (West 1993) (emphasis supplied). One of the primary goals of the bankruptcy regime is to maximize the assets of the debtor available to satisfy the rightful claims of creditor. That goal would be thwarted by allowing the bankrupt to retain equitable interests following discharge. The Bankruptcy Code does not countenance the permanent evasion of creditors by the simple expedient of a facially valid transfer of property.

---

1. Although not essential to the decision herein, and the Court makes no such finding, submissions by the Government suggest that Barbados law would in fact recognize Edwards' equitable interest in the property.

Furthermore, such a regime would be utterly alien to the American legal tradition.[2] Equitable interests in real property, such as that possessed by Edwards, are recognized by the laws of all fifty states, as well as by the federal law, and have been so recognized since the dawn of the Republic. *See, e.g., Burd v. Smith,* 4 U.S. (4 Dall.) 76, 1 L.Ed. 748 (1802). In *Burd,* one Mr. Blair M'Clenachan, heavily in debt, purported to convey by indenture of trust various real properties in which he was seised in fee. 4 U.S. (4 Dall.) at 77–79. The Supreme Court held the conveyance void, Mr. Justice Rush being of the opinion that:

> In the case before the Court, we have an instance of a man plunged into debt, covered with law suits, overwhelmed with judgments, and others impending over his head, suddenly and secretly, without the knowledge of a single creditor, conveying to trustees of his own nomination, an immense property, on such terms and in such manner, as he has chosen to prescribe. I cannot conceive any thing more dangerous, than to sanction by a judicial determination, a deed of this description.

*Id.* at 89. The same applies, almost 200 years later, to the deed by which Edwards purported to convey the Barbados condominium to his son.

Given the conclusion that Barbados law would be inapplicable if it denied that Edwards had any interest in the property,[3] the Court applied the general law of the states within the United States. These laws adequately protect the interest of the Bankruptcy Code and fortunately there is little dispute about their reach. The Massachusetts statement of the law is typical and appropriate:

> An equitable interest in land must be created as the result of some conveyance, contract, fraud, or other circumstances recognized by the law as creating such an interest and it cannot arise out of some vague consideration of abstract justice.

*Town of Belmont v. Massachusetts Amusement Corp.,* 333 Mass. 565, 570, 132 N.E.2d 172 (1956); *see also, e.g., Sheepscot Land Corp. v. Gregory,* 383 A.2d 16, 24 (Me.1978) (person through whom fraudulent conveyance passes as part of scheme to defraud grantor's creditors has no legal or equitable interest in the property); *Putnam Sand & Gravel Co. v. Albers,* 14 Cal.App.3d 722, 92 Cal.Rptr. 636, 639 (1971) (defendant retained equitable interest in fraudulently conveyed property). Interpreting Texas law, the Fifth Circuit has stated:

> The transferee [in a fraudulent transfer] may have colorable title to the property, but the equitable interest—at least as far as the creditors (but not the debtor) are concerned—is considered to remain in the debtor ... as though the debtor had never transferred it. We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a "legal or equitable interest[ ]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.

*In re MortgageAmerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983) (citing 4A COLLIER ON BANKRUPTCY ¶ 70.14[1], at 130–31 [14th ed. 1978] ); *In re Ciccone,* 171 B.R. 4, 5 n. 2 (Bankr.D.R.I.1994) (finding no acceptable rationale to depart from *MortgageAmerica* on issue of property of the estate); *see also Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1343 (7th Cir. 1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) (noting that courts have "regularly applied" Section 541 to include property fraudulently or improperly transferred by the debtor prior to bankruptcy).

The Government was thus entitled to charge and prove by circumstantial evidence

---

**2.** A sovereign that enacted a legal system of "no questions asked" as long as the proper forms of conveyance are followed would quickly become something of a financial "outlaw state," providing a haven for those who would circumvent the bankruptcy and creditor laws of the United States and other countries.

**3.** This decision obviates the need for the Court to address the more difficult question, raised and argued by the parties, of who bore the burden regarding the application of foreign law. *See* FED.R.CRIM.P. 26.1 ("A party who intends to raise an issue concerning the law of a foreign country shall give reasonable written notice.").

that the conveyance was a sham transaction, that Edwards retained an equitable interest in the condominium, and that Edwards committed a crime by failing to disclose it in his bankruptcy proceeding.

## III.  Conclusion

Edwards was not entitled to an instruction, and the Government was not obligated to prove, that under the law of Barbados he possessed an interest in the condominium at the time of commencement of his bankruptcy proceeding.  The motion for judgment of acquittal or for new trial was therefore properly denied.