HOSKEN, INC. *vs.* HINGHAM MANAGEMENT CORPORATION.

Suffolk. March 3, 1952. — April 7, 1952.

Present: LUMMUS, RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Equity Pleading and Practice*, Findings by judge, Appeal. *Evidence*, Relevancy and materiality.

Reported evidence in a suit in equity by a lessee against the lessor did not show to be plainly wrong findings by the trial judge favorable to the defendant on issues of fact raised by claims of the plaintiff respecting alleged breaches of the lease by the defendant and by a counterclaim of the defendant for electricity and water furnished to the plaintiff.

In a suit between the parties to a lease involving charges for electricity furnished by the lessor to the demised premises, testimony as to the cost to the lessor of delivering it thereto was admissible in view of evidence of an agreement between the parties that the lessee should pay for the electricity at such cost.

BILL IN EQUITY, filed in the Superior Court on April 10, 1951, by the lessee under a lease against the lessor.

The suit was heard by *Morton*, J.

*J. M. Hall*, for the plaintiff.

*C. L. Donahue*, for the defendant.

RONAN, J. This is an appeal by the plaintiff from a final decree dismissing the bill and allowing the counterclaim of the defendant for electricity and water furnished to the plaintiff.

The plaintiff contends that it suffered damage from leaks from the roof, windows and doors which the defendant in violation of the terms of a lease failed to put in first class condition; that the defendant demands excessive charges for electricity and water; and that the plaintiff has been damaged by the interruption of its operations by cutting off its supply of electricity and by unjustified threats of eviction. All these contentions raised questions of fact and the judge's findings were adverse to the plaintiff.

The plaintiff challenges these various findings of fact. The evidence consisted mainly of oral testimony together with nearly a score of exhibits. The correctness of these findings is open on this appeal but, under the well established rule, findings made on oral testimony are not to be disturbed unless shown to be plainly wrong. *Comstock* v. *Bowles,* 295 Mass. 250, 253–254. *Barnum* v. *Fay,* 320 Mass. 177, 180. *McKellar* v. *Hazen,* 325 Mass. 714, 719. As to findings based upon documentary evidence, this court stands in the same position as the trial judge and reaches its own conclusion unaffected by the findings made by the trial judge. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143. *Pitman* v. *Pitman,* 314 Mass. 465, 475–476. *Eno* v. *Prime Manuf. Co.* 314 Mass. 686, 700–701. *Attorney General* v. *"Forever Amber,"* 323 Mass. 302, 309. We must examine the evidence, and findings of fact based wholly or partly upon oral testimony are not to be set aside unless we are satisfied, after giving to the oral testimony all the weight that the trial judge could justifiably attribute to it, that, nevertheless, his findings are plainly wrong. *Malden Trust Co.* v. *Brooks,* 291 Mass. 273, 279. *Berry* v. *Kyes,* 304 Mass. 56, 57–58. *Boston* v. *Santosuosso,* 307 Mass. 302, 332. *Murphy* v. *Hanlon,* 322 Mass. 683, 685. The question for us is not the conclusion we might reach from what appears upon the printed record "but whether it can rightly be said that the findings made by the judge who saw the witnesses and heard them testify are plainly wrong." *Berman* v. *Coakley,* 257 Mass. 159, 162. *American Employers' Ins. Co.* v. *Webster,* 322 Mass. 161, 163. *Ross & Roberts, Inc.* v. *Simon,* 326 Mass. 12, 17.

We summarize the salient facts which form the background of this controversy. The defendant on October 12, 1950, leased to the plaintiff for the term of one year, with the right to two successive renewals of one year each, the entire building (except a closet or transformer room containing electrical equipment) known as building 54 in the Bethlehem-Hingham Naval Industrial Reserve Shipyard which was owned by the United States and had been leased

to the defendant. The lease to the plaintiff was subject to this head lease, which included a large tract of land together with several buildings. The building demised to the plaintiff had been used by the navy during the last war and evidently had not been occupied since it was vacated by the navy. This building contained 8,560 square feet. The plaintiff was engaged in designing and manufacturing furniture and at times employed as many as nine or ten persons including three finishers who worked as independent contractors and who frequently worked on Saturdays and Sundays. About the time the lease was executed the defendant, who was obligated by its terms to put the demised premises in good condition, sent its employees, whom it regularly employed to maintain the various buildings in the shipyard, to repair the floor, to remove partitions, and to put the premises in first class condition. The plaintiff moved in about the time the lease was signed and before this work was completed. The plumbing was put in order and so was the electrical system. With the permission of the defendant, the plaintiff had a hole cut in the roof and had installed a ventilator to take off the fumes from booths where the furniture was sprayed with lacquer. The day after Thanksgiving in 1950 the flashing on the corner of the tar and gravel roof was ripped up by a storm. A serious leak resulted from the improper installation of the ventilator and from the bending up of the flashing. After both places in the roof were repaired, there were no further leaks from either source. The lease made no mention of electricity but the parties agreed that it should be furnished by the defendant. The latter agreed to furnish the electricity at cost delivered to the leased premises although the defendant charged only two cents a kilowatt hour which was the rate it was charged by a utility company for electricity furnished to the shipyard. The parties understood that no meters for electricity could be secured for the demised building and they agreed to the method suggested by the defendant to determine the quantity. Other than paying the bill for October, 1950, the plaintiff, claiming that the quantity

charged was excessive, paid nothing for electricity since furnished, even after a meter was installed in the middle of March, 1951. The lease required the plaintiff to pay for water. The defendant charged $5 a month but the plaintiff paid nothing for water. In January, 1951, the defendant shut off the electricity on two working days. The power was turned on by the plaintiff on the first occasion and on the second by the defendant after the plaintiff's attorney agreed to confer and straighten out the dispute.

It was the duty of the judge to resolve conflicts in the testimony and he committed no error of law or fact if he refused to accept a part of the testimony, even if uncontradicted, given by a witness, who might have appeared to be inaccurate or mistaken. He could properly prefer and accept as true testimony which was favorable to the defendant rather than that presented by the plaintiff. The evidence has been carefully examined. Every finding made by the judge has been compared with the evidence. We are not convinced that any of them can be said to be plainly wrong. Nothing would be gained by setting forth an analysis of the evidence with respect to each particular finding. It was said in *Norcross* v. *Mahan,* 283 Mass. 403, 404, that "In a case like this, where marshalling the evidence would elucidate no principle of law and would interest no one but the parties, the court refrains from discussion." See, for instance, *Palmer Electric & Manuf. Co.* v. *Underwriters' Laboratories, Inc.* 284 Mass. 550, 554–555; *Ecklund* v. *Ecklund,* 288 Mass. 517, 518; *Bloom, South & Gurney, Inc.* v. *Mitchell,* 289 Mass. 376, 379; *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 84; *O'Reilly* v. *O'Reilly,* 293 Mass. 332, 334; *Murphy* v. *Donovan,* 295 Mass. 311, 315.

The testimony of the witness Calloway tended to show that the defendant paid more than two cents a kilowatt hour for electricity delivered to the entrance of the shipyard and that it cost more than that after being conducted one half or three quarters of a mile into the yard and to the demised building. There was evidence of an oral agreement

that the lessee should pay for electricity at cost to the lessor delivered to the demised building, and the testimony of the witness was competent on this aspect of the case.

*Decree affirmed with costs of this appeal.*