THOMAS A. MCMAHON *vs.* MONARCH LIFE INSURANCE
COMPANY.

Hampden.    November 5, 1962. — December 21, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Contract,* Construction, With insurance agent, Performance and breach.
  *Insurance,* Agent. *Equity Pleading and Practice,* Findings by judge,
  Appeal.  *Words,* "Induce," "Cause."

In a suit in equity with a report of the evidence but no report of mate-
  rial facts by the judge under G. L. c. 214, § 23, the entry of the final
  decree imported a finding of every fact essential to sustain it within the
  scope of the pleadings and supported by the evidence.    [262]
Upon appeal from the final decree in a suit in equity with a report of the
  evidence but no report of material facts, this court must examine the
  evidence and arrive at its own conclusions on questions of fact but will
  not reverse express or implied findings of the trial judge unless they are
  plainly wrong.    [262–263]
A provision of an employment contract between an insurance company
  and an agent, that "Should the Agent, after termination of this con-
  tract, in any way, directly or indirectly, induce a policyholder of this
  Company to lapse a policy, or should the Agent cause to be replaced
  with any other insurer any policy . . . of this Company lapsed within
  six months before or after the date of replacement, his rights to termi-
  nation commissions hereunder shall cease immediately," justified the
  company in ceasing payment of termination commissions not only upon
  acts of the former agent inducing the holder of one of the company's
  policies to permit the policy to lapse but also upon acts of the former
  agent causing the replacement elsewhere of a policy of the company
  which lapsed within the specified period before or after the replacement.
  [263–265]
At the trial of a suit in equity against an insurance company by one
  formerly employed by it as agent under a contract providing that after
  termination thereof his rights to termination commissions would cease
  immediately upon his causing the replacement with any other insurer of
  any policy of the defendant lapsed within six months before or after
  the date of replacement, a conclusion that the defendant was justified
  in ceasing payment of termination commissions to the plaintiff was war-
  ranted by evidence that the holders of certain lapsed policies of the
  defendant, within six months of the lapse thereof, subscribed to policies
  of another insurer of which the plaintiff had become a general agent,

that the plaintiff filed the applications for the new policies personally, and that he was aware that the new policies were replacing policies of the defendant.   [265–266]

BILL IN EQUITY filed in the Superior Court on March 2, 1960.

The suit was heard by *DeSaulnier,* J.

*William C. Giles, Jr.,* for the defendant.

*Harry M. Ehrlich (Matthew J. Ryan, Jr.,* with him) for the plaintiff.

KIRK, J.   The plaintiff (McMahon), pursuant to the provisions of G. L. c. 231A, seeks an adjudication of his right to termination commissions under an agent's contract with the defendant Monarch Life Insurance Company (Monarch).   Monarch contends that McMahon has violated the post-employment terms of his contract and consequently has lost his right to termination commissions.   After trial, a decree was entered adjudging that McMahon had not violated the contract and ordering Monarch to pay termination commissions in the sum of $3,451.38 with interest.   Monarch appealed.

The case comes to us with a report of all the evidence. There is no report of material facts under G. L. c. 214, § 23. In his order for decree the trial judge incorporated a brief statement of facts found by him and his interpretation of the paragraph in the contract relating to termination commissions.   Nothing in the form or content of the order for decree suggests that the judge intended that the facts stated therein should have, or could be considered by us to have, the same effect as a report of material facts under c. 214, § 23.   *Birnbaum* v. *Pamoukis,* 301 Mass. 561, 562. The entry of the decree for the plaintiff, however, imports a finding of every fact essential to sustain it within the scope of the pleadings and supported by the evidence.   *Cardullo* v. *Landau,* 329 Mass. 5, 6.

Monarch contends that the evidence does not support the findings of the judge or the decree.   The evidence consists of oral testimony and more than forty exhibits.   In these circumstances it is our duty to examine the evidence and arrive at our own conclusions on questions of fact and of

law, but not to reverse the findings of the judge, express or implied, unless we are satisfied that they are plainly wrong. *Warner* v. *Selectmen of Amherst,* 326 Mass. 435, 436. *Hosken, Inc.* v. *Hingham Management Corp.* 328 Mass. 588, 589. *Young* v. *Paquette,* 341 Mass. 67, 69–70.

We first mention evidence which is not disputed. On July 16, 1948, the plaintiff entered the employ of Monarch as an agent to sell policies of accident and health insurance and policies of life insurance. The terms of employment were set forth in a printed contract signed by McMahon and the general agent of Monarch. In the spring of 1959 while still in the employ of Monarch, McMahon entered into negotiations with the Loyal Protective Life Insurance Company (Loyal) for a general agency contract. The contract with Loyal was executed on April 30, 1959. It provided for a gross payment of a fixed sum annually to McMahon for the first three years, subject to adjustments contingent upon lapses of policies and quota sales of policies. McMahon gave due notice to Monarch that his agency contract would end on May 15, 1959. He commenced his duties as general agent for Loyal on May 18, 1959. Termination commissions were paid to McMahon through September, 1959. On November 19, 1959, Monarch notified him that his rights thereto had ceased because of a violation of his contract with Monarch.

The controversy between McMahon and Monarch centers on paragraph twelve of the contract executed by them on July 16, 1948. In pertinent part it reads: "12. Termination Commissions: . . . Should the Agent, after termination of this contract, in any way, directly or indirectly, induce a policyholder of this Company to lapse a policy, or should the Agent cause to be replaced with any other insurer any policy of Life or Health and Accident Insurance of this Company lapsed within six months before or after the date of replacement, his rights to termination commissions hereunder shall cease immediately."[1]

---

[1] Monarch in its amended answer relied upon violations of two other paragraphs of the contract. The judge made no reference to them in his brief findings. The view which we take of the case obviates setting them out in the opinion.

In the preface to his order for decree .the judge stated that the words "induce" or "cause," in context, "must mean doing something that *initially* causes a lapse or replacement." He concluded that Monarch "by this clause wished to eliminate the active initial solicitation of their policyholders to be replaced by policies then being sold by their former agents for another company." He found on the evidence that McMahon as the general agent for Loyal "was a conduit but not the initial cause or inducement for either the replacement or lapse of any policy." Finally, impliedly ruling that the language was ambiguous, he ruled that the clause could not be held to mean "specifically a prohibition against signing applications or doing anything in a conduit capacity as . . . [a general agent]" of Loyal.

It is our duty to construe the contract. *Hiller* v. *Submarine Signal Co.* 325 Mass. 546, 549–550. *Forte* v. *Caruso,* 336 Mass. 476, 481.

We think that the judge's construction of the quoted part of paragraph twelve was unduly narrow. In making our construction we are guided by recognized principles, one of which is that a contract is to be construed to give a reasonable effect to each of its provisions if possible. *S. D. Shaw & Sons, Inc.* v. *Joseph Rugo, Inc.* 343 Mass. 635, 640, and cases cited. Another principle is that a contract should be construed so as to give it effect as a rational business instrument and in a manner which will carry out the intention of the parties. *New York Cent. R.R.* v. *New England Merchants Natl. Bank,* 344 Mass. 709, 714. The plain purpose of the provision under consideration is to relieve Monarch of the obligation to pay commissions to a former agent who at the same time is depriving Monarch of the policyholders whose premiums constitute the source of the agent's commissions. We construe the provision as setting out three contingencies, any one of which would result in the cessation of the right to termination commissions of an agent who has left Monarch's employ: (1) inducing the holder of a Monarch policy to permit his policy to lapse; (2) causing the holder of a Monarch policy which had lapsed within the

preceding six months to replace it with a similar policy of another company; (3) causing the holder of a Monarch policy to subscribe to a similar policy of another company if within six months thereafter the holder permits his Monarch policy to lapse.

The restricted interpretation sought by McMahon would cover the first contingency but would not reach the situations contemplated by the second and third contingencies. It would render them superfluous, a result which is not consonant with the principles of construction to which we have already adverted. *Sherman* v. *Employers' Liab. Assur. Corp. Ltd.* 343 Mass. 354, 357, and cases cited.

We think it is pertinent to point out that the provision, as we construe it, is not unreasonable when viewed in the light of the considerations involved in covenants not to compete to which it is somewhat analogous. The provision leaves it to the former agent to decide, as his own interests dictate, whether to sell to Monarch's policyholders during a limited period of time the kind of insurance which might result in the forfeiture of his right to termination commissions. There is no restriction whatever on the former agent's right to compete with Monarch anywhere for new customers for any kind of insurance. Nor is there any restriction as to the amount of different or additional insurance which he may sell for Loyal to Monarch policyholders.

We think that the provision under consideration implicitly sets out an agreed basis for the determination of the cause of a replacement by objective standards. Given (a) the fact of a lapsed Monarch policy, (b) the fact of a sale of a similar policy in a rival company to the same person either six months before or six months after the lapse of the Monarch policy, and (c) the fact that the sale is attributable to the efforts of a former agent of Monarch who is a party to the contract, the contract requires the conclusion that the agent has caused the replacement of a Monarch policy by one of the rival company.

The record discloses that, on uncontroverted or admitted facts, the conclusion of violations of the contract by

McMahon is inescapable. There is a stipulation as to the dates when certain Monarch policies lapsed. Among the named several holders of the lapsed policies were one Strassberger, one DeAngelo, one Wright, and one Lauzier. All four subscribed to Loyal policies within six months of the date of the lapse of their Monarch policies. All four had been clients of McMahon when he was with Monarch. The applications for Loyal policies for these individuals were filed by McMahon personally and not by one of the agents in his office as was the case in some other instances. It was, therefore, through the efforts of McMahon, according to his own testimony, that these former Monarch policyholders became Loyal policyholders. In each case the chain of events, viewed in the light of the objective standards contemplated, establishes the fact that the replacement of the Monarch policy by a Loyal policy was caused by McMahon, and consequently constitutes a violation of his contract.

There is, in addition, documentary evidence subpoenaed from Loyal's files that McMahon was specifically aware that these and other policies were to replace Monarch policies. On the back of the form of application for a Loyal policy a space was reserved for special comments from the agent to the insurer. The exhibits disclose at least twelve instances where in this space over McMahon's signature there appear such statements as: "This policy will replace Monarch"; "Monarch coming due July 1, he is replacing it with Loyal"; and "will drop [Monarch] on del. of this policy."

The application of the standard of review earlier stated requires that the decree be reversed. At the argument before us Monarch waived its demand for the repayment of termination commissions already made to McMahon. Accordingly, a final disposition of the case may now be made. A decree is to be entered that the plaintiff, having violated the contract, is not entitled to termination commissions. Costs of the appeal to the defendant.

*So ordered.*