Forte, J.
This is an action by third-party plaintiff William Redler, Jr. (“Redler”) to recover $8,7775.00 for the alleged breach by third-party defendant Professional Advantage Financial Group, Inc. (“PAFG”) of its written agreement to loan Redler $78,000.00 for the purchase of a condominium.[4] PAFG has appealed the trial court’s entry of judgmentfor Redler on a charge of error in the following rulings and findings reported to this Division by the trial judge:
1. The conditions set forth on the Commitment Letter were not a condition precedent to PAFG’s granting a loan to Redler; and
2. Redler acted reasonably in assuming that he had a valid binding commitment.
The reported evidence indicates that in February, 1991, Redler met with PAFG employee Arthur Coe (“Coe”) to prequalify for a mortgage loan to finance the purchase of a condominium owned by Natale Camper (“Camper”) and offered for sale by realtor Betty Gibson, Inc. Coe advised Redler that based on the financial information he had submitted and subject to its verification, Redler would qualify for a loan of approximately $78,000.00.
In March, 1991, Redler executed a purchase and sale agreement for the condominium and paid a purchase deposit of $8,775.00. The agreement contained a mortgage contingency clause which provided that Redler could terminate the agreement and recover his deposit if he were unable, despite diligent efforts, to obtáin a loan commitment of $78,975.00 on or before May 1,1991.
On March 17,1991, Redler submitted an application for a $78,000.00 first mortgage loan to Coe, and represented for the second time that he had balances of approximately $8,200.00 and $7,700.00 in two separate accounts with the Shawmut Bank. Coe again advised Redler that his maintenance of average account balances in the specified amounts was an FNMA loan requirement.
On April 25,1991, PAFG issued a Commitment Letter to Redler for a $78,900.00 *84 loan. The Letter began:
We are pleased to inform you that your mortgage loan application has been approved. We commit to make a mortgage loan to vou. secured by a first lien on the real estate, as follows:... [emphasis supplied].
The terms and conditions of PAFG’s commitment were then set forth in seven succeeding sections of the Letter and in an attached Rider. The relevant provisions stated:
COMMITMENT TERMS [emphasis in original]
This commitment is effective upon receipt of a signed copy of this letter and payment of one point ($789.00) within ten (10) days fromthe date above.
This commitment will expire on June 14,1991. Professional Advantage Financial Group, Inc. reserves the right, to verify the information used to sunnortvour loan commitmentand to withdraw this commitmentif there are anv changes prior to closing...[emphasis supplied].
ADDITION AT. CONDITIONS: [emphasis in original]
Any additional conditions are described on the attached rider, and must be complied with at least five business days prior to closing.
ADDITIONAL CONDITIONS RIDER [emphasis in original]
The following conditions of approval must be satisfied at least five business days prior to closing:...
3. Copies of Shawmut savings and checking statements supporting $8200 and $7700 respectively for past two months as source of deposit/cash to close.
Neither Redler nor his attorney showed PAFG’s Coihmitment Letter to seller Camper, or informed her of the conditions set forth therein. Redler did not exercise his option to terminate the purchase and sale agreement or seek an extension thereof, and the mortgage contingency clause expired on May 1,1991.
The “past two months” time frame of Additional Condition No. 3 clearly referred to the two months preceding the April 25,1991 Commitment Letter (i.e., February 25-March 25,1991 and March 25-April 25,1991). In response to this requirement, Redler submitted various statements from two Shawmut checking accounts.[5] Redler failed, however, to provide a statement for the first account for the period March 29,1991 through April 25,1991. Redler also failed to supply a statementfor the second account covering the period February 25,1991 through March 25,1991.
Contrary to Redler’s March 17, 1991 representations to Coe of his total bank *85 balances of approximately $15,900.00, the bank statements show only $9,230.28 and $4,403.99 in the accounts as of March 17,1993, or $2,266.00 less than Redler had represented.
On May 17,1991, Coe informed Redler that there was a problem with his hank statements. In addition to missing statements, Redler’s accounts showed deposits substantially in excess of his gross monthly income. PAFG’s underwriter (FNMA) was concerned that Redler had obtained secondary financing for the condominium in violation of the terms of the Commitment Letter which required the “prior written approval” of PAFG for any borrowing of additional purchase funds.
With the consent of all parties, the original closing date of May 15, 1991 was extended first to May 22, 1991 and then to June 24, 1991. On May 22, 1991 Coe requested a “gift letter” to clarify bank deposits, which Redler refused to provide. On June 20,1991, PAFG exercised its reserved right by withdrawing its mortgage loan commitment to Redler.
Included in the trial court’s extensive findings and rulings were the following: that PAFG had a copy of Redler’s purchase and sale agreement and was thus aware of the May 1,1991 mortgage contingency deadline; that after May 1,1991, Coe told Redler that “everything looked good”; and that Redler refused to provide a gift letter, but signed and delivered an affidavit to Coe to explain a $4,400 deposit.[6] The court also found, in pertinent part:
PAFG contends thatthose [five] additional conditions [in the Rider] must be satisfied and are ... a condition precedent to the actual commitment. Upon receipt of the.. .letter of April 25,1992 [sic], Redler had sufficient time to avail himself of the opportunity to extricate himself from the purchase of the condo under the terms of.. . his purchase and sale agreement if no commitment had been secured from PAFG. The fact that neither he nor his attorney did so is a clear indication that they both assumed that a commitment had been given by PAFG and that the scheduled closing would take place on May 15th. This assumption is further buttressed by the fact that a conveyancing attorney had been chosen by PAFG to represent them at the passing. There is also evidence that Redler was reassured by Mr. Coe.. .that ‘everything looked good’ and nothingfurtherwas required. If Redler had not received a commitment from PAFG, a letter to the seller. . .would have resulted in a return of Redler’s deposit to him.
The fact that Coe requested a “gift letter” from Redler is yet another indication that PAFG intended to go along with a mortgage commitment.
No request for bank statements were made prior to April 25, 1991 by PAFG. If indeed the additional conditions are to be construed as a condition precedent to the issuance of a commitment those statements should have been required prior to the commitment letter of April 25,1991.
On all the evidence I find that Redler was acting reasonably in assuming that he had a valid binding commitment.
1. A condition precedent “defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.” Massachusetts Municipal Whole. Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991). See also, Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761, 763 n.5 (1980); RESTATEMENT (SECOND) OF CONTRACTS, § 224 (1981). Whether the Additional Conditions set *86 forth in the Rider herein constituted a condition precedent depended solely upon the mutual intent of the parties, Malden Knitting Mills v. United States Rubber Co., 301 Mass. 229, 233 (1938), as manifested by “the words used.. .the agreement taken as a whole and surrounding facts and circumstances,” Massachusetts Municipal Whole. Elec. Co. v. Danvers, supra at 45-46, including the conduct of the parties subsequent to contract execution. Id. at 59.
There was no error in the trial court’s ruling that the Additional Conditions set forth in the Rider were not conditions precedent to PAFG’s contractual commitment for a mortgage loan to Redler. PAFG’s April 25,1991 Commitment Letter expressly stated that Redler’s mortgage loan application had been approved, that PAFG was committed to making the mortgage loan in question, and that such commitment would become effective upon Redler’s signature and payment of $789.00within ten days. The conduct of both parties subsequent to the issuance of the Commitment Letter supports the court’s determination that the five Additional Conditions were not conditions precedent to the legal effectiveness of PAFG’s contractual promise.
2. However, there was no basis in law or in the reported evidence for either the trial court’s second ruling that Redler “acted reasonably in assuming” he had a binding commitment, or its resulting judgment against PAFG for breach of contract in failing to provide financing.
A binding loan commitment is not automatically unconditional and enforceable. A loan commitment is
a binding pledge made by the lender to the borrower to make a loan usually at a stated rate within a given period of time for a given purpose subject to the compliance of the borrower with stated conditions [emphasis supplied].
Charing Cross Corp. v. Comfed Mortgage Co., 25 Mass. App. Ct. 924, 926 (1987). Although a “solid commercial engagement on both sides,” a loan commitment is subject to “contingencies... which may abort the transaction, Springfield Y Trust v. Executive Dir. of the Mass. Housing Fin. Agency, 369 Mass. 709, 714 (1976); see also, Coolidge Bank & Trust Co. v. First Ipswich Co., 9 Mass. App. Ct. 369, 371 (1980), which are in the nature of “conditions subsequent.” Such conditions do not preclude the creation of an effective contract, butmay subsequently defeat it by relieving the lender of the obligation of further performance. Tilo Roofing Co. v. Pellerin, 331 Mass. 743, 746 (1954); Howland v. Plymouth, 319 Mass. 321, 324 (1946); Wood v. Roy Lap idus, Inc., supra at 764 n.6. See also, RESTATEMENT (SECOND) OF CONTRACTS, § 230 (1981). The Additional Conditions set forth in PAFG’s Commitment Letter Rider constituted such conditions subsequent to its mortgage commitment. As the parties’ contract could not be construed so as to render such Additional Conditions mere surplusage, McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264-265 (1962), Redler could not have “reasonably assumed” he had an enforceable commitment absent his compliance with such Conditions.
The term “condition” is one of common parlance and Redler was, in any event, represented by legal counsel at all stages of the parties’ transaction. His submission of bank statements and other financial documentation after April 25,1991 establishes his recognition of both the existence of, and his obligation to comply with, the Additional Conditions. There was also no evidence of statements or conduct by PAFG’s Coe prior to May 1,1991 which could have been reasonably interpreted as a waiver of such conditions, or as an unconditional financing commitment upon which Redler could have justifiably relied in failing to exercise his mortgage contingency termination rights or to seek an extension thereof. Subsequent to the May 1,1991 expiration of the mortgage contingency clause, no further action could have been taken by Redler to terminate the condominium purchase and recover his deposit. *87 Thus any statements arguably made by Coe (see note 5) after May 1, 1991 were irrelevant in that they could not have induced Redler to take any action of a substantial and material nature. See Loranger Construc. Corp. v. E. F. Hauserman Co., 376 Mass. 757, 760-761 (1978); Tull v. Mister Donut Develop. Corp., 7 Mass. App. Ct. 626, 631 (1979); RESTATEMENT (SECOND) OF CONTRACTS, § 90(1) (1981). Indeed, Redler’s continued submission of financial documentation, however inadequate, demonstrates that he placed no reliance on any expression of opinion by Coe that “things looked good” and that nothing further was required. PAFG’s continuing demands for adequate documentation by Redler were clearly consistent with its insistence upon Redler’s satisfaction of conditions subsequent, and its reserved right to terminate upon his failure to do so.
3. The report states that Redler failed to provide bank statements called for by Additional Condition No. 3. Given such failure, and Redler’s inability to substantiate the financial information he had provided as the basis of his mortgage application, PAFG properly exercised its reserved right to withdraw its loan commitment. There was no misrepresentation by PAFG, nor was it estopped from exercising such reserved right.
Accordingly, the trial court’s judgment in favor of third-party plaintiff Redler is hereby reversed and vacated. Judgment is to be entered for third-party defendant PAFG. So ordered.

 Summaryjudgment was entered against Redler, as defendant, in the original action brought by the prospective seller of the condominium, Natale Camper, for Redleris breach of the parties’ purchase and sale agreement. Camper recovered liquidated damages in the amount of Redleris $8,775.00 purchase deposit. This $8,775.00judgment is the basis of Redleris claim against PAFG for $8,775.00 in damages.

 Statements for the first account indicated balances of $11,125.00 (2/28/91) and $8,895.55 (3/29/91). As indicated, no statement for March 29,1991 through April 25,1991 was supplied. The opening and closing balances on April 30 and May 31,1991 were $8,161.00 and $5,287,000 respectively.
Statements for the second account showed end month balances of only $219.19 (2/19/91) and $454.98 (4/16/91). No statement covering the period February 20,1991 through March 25, 1991 was provided. The opening balance for March 18, 1991 was $4,403.99. The second statement reflects the April 8, 1991 debiting of a $7,775.00 check which Redler contends constituted payment of the balance of his purchase deposit

 There is no reported evidence to support these findings of Coe’s representations or of any Redler affidavit.